FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN

APR 1 2 2007

BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RECEIVED
IN CLERK'S OFFICE

APR 0 9 2007

U.S. DISTRICT COURT
MID. DIST. TENN

OSCAR SMITH, )
)
PLAINTIFF )
)
)
VS. ) CASE NO _____ 3  0 7  0 4 0 2
)
) **JUDGE CAMPBELL**
GEORGE LITTLE, )
TDOC COMMISSIONER )
)
ROLAND COLSON, )
TDOC COMMISSIONER OF OPERATIONS )
)
RICKY J. BELL, WARDEN at R.M.S.I. )
)
MIKE CRUTCHER, DEPUTY WARDEN )
at R.M.S.I. )
)
MIKE SLAUGHTER, UNIT MANAGER )
UNIT 2 at R.M.S.I. )
)
NICKY SALYERS, CASE MANAGER )
UNIT 2 at R.M.S.I. )
)
GARY HAYES, INMATE RELATIONS )
COORDINATOR of UNIT 2 at )
R.M.S.I. )
)
JERRY NEWMAN, INMATE JOB )
COORDINATOR at R.M.S.I. )
)
)
DEFENDANTS )
)
)

**COMPLAINT OF DUE PROCESS VIOLATIONS
OF THE UNITED STATES CONSTITUTION**

1

COMPLAINT

INTRODUCTION

1). I, OSCAR SMITH, ON APRIL 21, 2006, WAS DISMISSED FROM MY JOB AS LEATHER CRAFT INSTRUCTOR BY MR. MIKE SLAUGHTER THE UNIT MANAGER OF UNIT 2 RIVERBEND MAXIMUM SECURITY INSTITUTION. THIS DISMISSAL WAS THE BEGINNING OF A SERIES OF HARASSING AND ILLEGAL ACTIVITIES WHICH THE PLAINTIFF HAS BEEN SUBJECTED TO. PLAINTIFF CONTENDS THAT THESE ACTIVITIES HAVE BEEN THE RESULT OF PLAINTIFFS ATTEMPTS TO GET MR. GARY HAYES, UNIT 2 INMATE RELATIONS COORDINATOR, TO PAY FOR LEATHER CRAFT PROJECTS WHICH IRC HAYES HAD COMMISSIONED AND RECEIVED FROM PLAINTIFF OSCAR SMITH. PLAINTIFF SMITH'S ATTEMPTS TO SEEK PAYMENT FOR THESE ITEMS WERE FRUITLESS AND CULMINATED IN IRC. HAYES MAKING THREATS OF BODILY INJURY TOWARD PLAINTIFF SMITH. PLAINTIFF SMITH WENT TO UNIT MANAGER MIKE SLAUGHTER CONCERNING THE THEFT OF PROPERTY BY IRC. HAYES AS WELL AS THE THREATS MADE BY HAYES TO PLAINTIFF. UNIT MANAGER MIKE SLAUGHTER'S RESPONSE TO PLAINTIFF CONCERNING THE THEFT AND THREATS WAS "THAT IS BETWEEN YOU AND MR. HAYES". ON JANUARY 10, 2006, LESS THAN ONE MONTH AFTER PLAINTIFF'S COMPLAINT AGAINST IRC HAYES, PLAINTIFF SMITH WAS SUMMONED TO THE UNIT MANAGER'S OFFICE FOR A MEETING BETWEEN PLAINTIFF, THE UNIT MANAGER, UNIT IRC HAYES, AND WITH SERGEANT HUGH RUSHTON AS WITNESS. DURING THIS MEETING THE UNIT MANAGER CLAIMED THAT I (PLAINTIFF SMITH) HAD VIOLATED ARTS AND CRAFTS POLICY AND HAD COMMITTED AN ILLEGAL FINANCIAL TRANSACTION BY RECEIVING A MONEY ORDER ILLEGALLY. THE POLICY VIOLATION AROSE OUT OF DIRECTIVES GIVEN TO ME FROM MY SUPERVISOR (IRC HAYES) TO ASSIST

-2-

OTHER INMATES IN PURCHASING ARTS AND CRAFTS MATERIAL BY ALLOWING THEM TO PLACE ORDERS THROUGH ME AND TO COMBINE PACKAGES TO REDUCE SHIPPING COSTS? THE ILLEGAL TRANSACTION WAS A RESULT OF MY HAVING RECEIVED AND HAVING SENT OUT A MONEY ORDER. ALTHOUGH MR. HAYES DID NOT ADMIT THAT HE HAD GIVEN ME THE DIRECTIVE WHICH COVERED THE CLAIMS MADE BY THE UNIT MANAGER, I DO HAVE EVIDENCE BOTH IN WRITTEN FORM AND WITNESS WHICH DOES PROVE THAT I WAS ACTING UNDER THE DIRECTIVE OF IRC HAYES AND THAT HE HAD IN FACT DIRECTED NOT ONLY MYSELF BUT OTHER INMATES AS WELL AS VENDORS TO FOLLOW HIS DIRECTIVES. I DID IN FACT RECEIVE A MONEY ORDER WHICH I THEN SENT BACK OUT TO THE VENDOR TO WHICH IT HAD BEEN FILLED OUT BUT NO ILLEGAL TRANSACTION OCCURRED - AT LEAST NOT ON MY PART. THE ONLY "ILLEGAL" ACTIVITIES WERE CONDUCTED BY RMSI PERSONNEL. I DID IN FACT RECEIVE A MONEY ORDER FROM MY BROTHER WHICH THE RMSI MAILROOM PERSONNEL WAS SUPPOSED TO HAVE, BY POLICY, REMOVED FROM MY MAIL. THIS MONEY ORDER WAS INTENDED TO GO TO A VENDOR TO PURCHASE ARTS AND CRAFTS MATERIALS SO I TOOK THE MONEY ORDER AND PLACED IT IN AN ENVELOPE AND ADDRESSED IT TO THE INTENDED VENDOR (WHICH THE MONEY ORDER WAS MADE OUT TO) AND SENT IT OUT THROUGH THE RMSI MAIL SYSTEM. ON JANUARY 17, 2006, SEVEN DAYS AFTER THE MEETING IN SLAUGHTER'S OFFICE, I WAS GIVEN TWO (2) DISCIPLINARIES BY IRC HAYES. ONE DISCIPLINARY WAS FOR THE ARTS AND CRAFTS POLICY VIOLATION AND THE OTHER WAS FOR AN ILLEGAL FINANCIAL TRANSACTION. THE FIRST DISCIPLINARY WAS DISMISSED BY THE DISCIPLINARY BOARD CHAIRMAN LIEUTENANT LOVE WHO THEN REMANDED THE SECOND DISCIPLINARY TO IRC HAYES BECAUSE

-3-

THE DISCIPLINARY WAS VOID AS WRITTEN FOR FAILING TO STATE A POLICY VIOLATION. I WAS INFORMED OF THESE TWO DECISIONS ON MARCH 23, 2006 AND THOUGHT THE DISCIPLINARY MATTER CLOSED. ON MARCH 30, 2006, I WAS CALLED OUT TO A SPECIAL LEVEL REVIEW HEARING WHICH WAS ORDERED CONVENED BY THE UNIT MANAGER. THE UNIT MANAGER FALSIFIED INFORMATION TO THIS REVIEW BOARD STATING THAT INMATE (SMITH) HAS "2 DISCIPLINARIES PENDING". THIS BOARD, HEADED BY UNIT 2 CASE MANAGER NICK SALYER, ACTING ON THE FALSIFIED INFORMATION GIVEN BY THE UNIT MANAGER, RECOMMENDED THAT I RECEIVE A LEVEL DROP TO LEVEL-C, WHICH THE UNIT MANAGER APPROVED. ON APRIL 11, AND ON APRIL 12, 2006, THE UNIT MANAGEMENT ONCE AGAIN ATTEMPTED TO FILE THESE DISCIPLINARIES AGAINST ME BUT AGAIN THE BOARD NOTING NO VIOLATION DISMISSED THE DISCIPLINARIES ON MAY 3, 2006. ON MAY 16, I WAS NOTIFIED OF THE DISMISSALS AND ON MAY 18, 2006, WAS TAKEN TO THE LEVEL REVIEW BOARD WHO THEN REINSTATED MY LEVEL-A STATUS. I THEN FILLED OUT AN INFORMATION REQUEST FORM ASKING UNIT MANAGER MIKE SLAUGHTER WHEN I WOULD BE REINSTATED IN THE ARTS AND CRAFTS PROGRAM AND HAVE MY JOB REINSTATED. MR. SLAUGHTER IN A FURTHER ACT OF VINDICTIVENESS TOLD ME THAT HE WOULD NOT REINSTATE ME AS LEATHER CRAFT INSTRUCTOR AND THAT ALTHOUGH THE DISCIPLINARIES HAD BEEN DISMISSED HE WAS KEEPING ME FROM EVEN PARTICIPATING IN THE ARTS AND CRAFTS PROGRAM FOR A PERIOD OF ONE (1) YEAR. I WAS THEN FORCED TO MOVE FROM C-POD TO A-POD AND TAKE THE JOB OF POD CUSTODIAN OR RECEIVE A DISCIPLINARY FOR REFUSAL TO PARTICIPATE. I HAVE SINCE FILED THREE (3) GRIEVANCES ON THE ACTIONS OUTLINED ABOVE.

-4-

A) FIRST GRIEVANCE FILED ON JUNE 12, 2006, OVER JOB DROP AND REQUESTING REINSTATEMENT. RECEIVED FINAL DECISION FROM TDOC COMMISSIONER ON SEPTEMBER 12, 2006 DENYING MY REQUEST. SEE EXHIBIT #1.

B) FILED SECOND GRIEVANCE ON AUGUST 22, 2006 CLAIMING TITLE VI VIOLATION BY UNIT MANAGER SLAUGHTER. RECEIVED FINAL DECISION BY TDOC COMMISSIONER ON SEPTEMBER 26, 2006. SEE ATTACHED EXHIBIT #2.

C) FILED THIRD GRIEVANCE ON SEPTEMBER 10, 2006 AGAINST MR. GARY HAYES FOR THE THEFT OF PROPERTY AND FOR THREAT OF BODILY INJURY. WAS DENIED AND RECEIVED FINAL DECISION FROM COMMISSIONER ON NOVEMBER 15, 2006. SEE ATTACHED EXHIBIT #3

NOTE: THE RMSI MAIL ROOM PERSONNEL INTERCEPTED MY OUT-GOING MAIL, MADE A COPY OF THE MONEY ORDER, AND THEN SENT THE MONEY ORDER ON TO THE VENDOR. THE MAIL ROOM PERSONNEL WOULD HAVE NEVER KNOWN TO INTERCEPT THE OUT-GOING MAIL AND LOOK FOR THE MONEY ORDER HAD THEY NOT LEFT THE MONEY ORDER IN MY MAIL ORIGINALLY WITH THE INTENTION OF INTERCEPTING IT ON ITS WAY OUT. THIS WAS A CONSPIRACY BETWEEN MAIL ROOM PERSONNEL AND UNIT MANAGEMENT AND SINCE IT WAS DONE WITH THE INTENTION TO TAKE MY JOB, COVER UP THE THEFT AND THREATS MADE BY THE IRC, AND IN DIRECT RETALIATION FOR EXERCISING MY CONSTITUTIONAL RIGHTS, AND WITH THE SUPPORT OF THE WARDEN AND TDOC COMMISSIONER, THIS CONSPIRACY IS IN DIRECT VIOLATION OF THE RICO ACT.

2). HAVING EXHAUSTED ALL AVAILABLE ADMINISTRATIVE REMEDIES

AND HAVING BEEN DENIED ANY RELIEF THROUGH THE TENNESSEE DEPARTMENT OF CORRECTION, I HAVE NO FURTHER RECOURSE BUT TO FILE TITLE VI VIOLATIONS AS WELL AS VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA AND VIOLATIONS OF THE 8TH AMENDMENT OF THE CONSTITUTION FOR IMPOSING CRUEL AND UNUSUAL PUNISHMENTS, AS WELL AS VIOLATIONS OF THE RICO STATUTE, AGAINST ALL RMSI AS WELL AS TDOC PERSONNEL WHICH ARE FOUND TO BE LIABLE. PLAINTIFF HEREBY PRAYS THIS HONORABLE COURT HEAR MY PLEAS AND GRANT THE RELIEF SOUGHT IN THIS COMPLAINT.

### PARTIES

3). PLAINTIFF OSCAR F. SMITH TDOC# 136424, AN INMATE RESIDING AT RIVERBEND MAXIMUM SECURITY INSTITUTION, UNIT 2, 7475 COCKRILL BEND BLVD. NASHVILLE, TENNESSEE 37209-1048.

### DEFENDANTS

4). GARY HAYES, INMATE RELATIONS COORDINATOR OF UNIT 2 AT RIVERBEND MAXIMUM SECURITY INSTITUTION, NASHVILLE, TENNESSEE 37209-1048.

5). NICK SALYER, CASE MANAGER, UNIT 2, RIVERBEND MAXIMUM SECURITY INSTITUTION, 7475 COCKRILL BEND BLVD. NASHVILLE, TENNESSEE 37209-1048.

6). MIKE SLAUGHTER, UNIT MANAGER, UNIT 2, RIVERBEND MAXIMUM SECURITY INSTITUTION, 7475 COCKRILL BEND BLVD. NASHVILLE, TENNESSEE 37209-1048.

7). JERRY NEWMAN, INMATE JOB COORDINATOR, RIVERBEND MAXIMUM SECURITY INSTITUTION, 7475 COCKRILL BEND BLVD. NASHVILLE, TENNESSEE 37209-1048.

8). UNNAMED DEFENDANTS, THESE DEFENDANTS NAMES ARE PRESENTLY UNKNOWN TO PLAINTIFF. THESE DEFENDANT'S NAMES MAY BE FOUND OUT THROUGH MINIMAL INVESTIGATION AND MAY INCLUDE UNIT 2 PERSONNEL AND/OR TDOC PERSONNEL SUCH AS MAIL ROOM PERSONNEL WHO MAY BE FOUND TO HAVE BEEN INVOLVED IN THE CHARGES HEREIN. THESE DEFENDANTS ARE OR WERE EMPLOYEES OF RIVERBEND MAXIMUM SECURITY INSTITUTION, 7475 COCKRILL BEND BLVD. NASHVILLE, TENNESSEE 37209-1048.

9). MIKE CRUTCHER, DEPUTY WARDEN AT RIVERBEND MAXIMUM SECURITY INSTITUTION, 7475 COCKRILL BEND BLVD. NASHVILLE, TENNESSEE 37209-1048.

10). RICKY J. BELL, WARDEN AT RIVERBEND MAXIMUM SECURITY INSTITUTION, 7475 COCKRILL BEND BLVD. NASHVILLE, TENNESSEE 37209-1048.

11). ROLAND COLSON, COMMISSIONER OF OPERATIONS OF THE TENNESSEE DEPARTMENT OF CORRECTIONS, 44 RACHEL JACKSON BUILDING, 320 SIXTH AVENUE NORTH, NASHVILLE, TENNESSEE 37243.

12). GEORGE LITTLE, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF CORRECTIONS, 44 RACHEL JACKSON BUILDING, 320 SIXTH AVENUE NORTH, NASHVILLE, TENNESSEE 37243.

## JURISDICTION/VENUE

13). JURISDICTION IS PROPER BEFORE THIS COURT UNDER 28 U.S.C. 1331 AND 42 U.S.C. 1983, AND AS A RESULT OF THE DECISION IN HANNA V. TONER, 630 F.2d 442 (6TH. CIR. 1980).

14). VENUE IS PROPER BEFORE THIS COURT UNDER 28 U.S.C. 1331(a)(e) AND/OR 28 U.S.C. 1391(b).

## FACTS

15). IN DECEMBER 2005, AFTER HAVING ATTEMPTED ON SEVERAL OCCASIONS TO GET DEFENDANT GARY HAYES TO PAY FOR LEATHER CRAFT PROJECTS HE HAD PURCHASED, PLAINTIFF OSCAR SMITH RECEIVED A THREAT OF PHYSICAL BODILY HARM FROM DEFENDANT HAYES.

16). THAT SAME MONTH, PLAINTIFF INFORMED THE UNIT MANAGER, MIKE SLAUGHTER THAT IRC HAYES WAS REFUSING TO PAY FOR HIS PURCHASES AND THAT DEFENDANT HAYES HAD TOLD PLAINTIFF "I HAVE BEEN LOOKING FOR A REASON TO BUST YOUR HEAD". HOWEVER, UNIT MANAGER SLAUGHTER NOT ONLY FAILED TO ACT ON THE THEFTS OR ON THE THREAT, HE ADVISED PLAINTIFF "THAT IS BETWEEN YOU AND MR. HAYES."

17). ON JANUARY 10, 2006, LESS THAN A MONTH AFTER PLAINTIFF BROUGHT COMPLAINTS AGAINST HAYES, PLAINTIFF WAS SUMMONED TO THE UNIT MANAGER'S OFFICE. AT THIS MEETING PLAINTIFF WAS INFORMED THAT HE WAS IN VIOLATION OF ARTS AND CRAFTS POLICY AND THAT HE HAD MADE AN ILLEGAL FINANCIAL TRANSACTION.

18). PLAINTIFF SMITH INFORMED THE UNIT MANAGER OF THE FOLLOWING:

> THAT HE HAD NOT VIOLATED POLICY AND HAD IN FACT BEEN WORKING UNDER THE DIRECTIVES OF HIS SUPERVISOR IRC GARY HAYES WHO HAD INSTRUCTED THE PLAINTIFF TO ASSIST OTHER INMATES IN PURCHASING ARTS AND CRAFTS PACKAGES BY ALLOWING THEM TO COMBINE THEIR PACKAGES WITH HIS AND TO ALLOW THEM TO PLACE ORDERS THROUGH THE PLAINTIFF. THESE DIRECTIVES WERE NOT ONLY GIVEN TO PLAINTIFF BUT IRC HAYES HAD IN FACT GIVEN THE SAME DIRECTIVES TO OTHER INMATES AS WELL AS TO THE VENDOR SO THE VENDOR COULD COMBINE

-8-

THE PACKAGES.

19). ON JANUARY 10, DEFENDANT MIKE SLAUGHTER, OMITTING THE DUE PROCESS OF THE DISCIPLINARY POLICY, PUT OUT A STAFF MEMO DENYING PLAINTIFF ACCESS TO ARTS AND CRAFTS AND EFFECTIVELY TAKING PLAINTIFF'S JOB.

20). ON JANUARY 17, 2006, PLAINTIFF WAS GIVEN TWO (2) DISCIPLINARIES; ONE FOR ARTS AND CRAFTS POLICY VIOLATIONS AND ONE FOR ILLEGAL FINANCIAL TRANSACTION.

21). THE FIRST DISCIPLINARY WAS DISMISSED BY DISCIPLINARY BOARD CHAIRMAN LIEUTENANT LOVE. LT. LOVE ALSO REMANDED THE SECOND DISCIPLINARY TO IRC HAYES FOR FAILURE TO STATE A POLICY VIOLATION. ON MARCH 23, 2006, PLAINTIFF AND UNIT STAFF WAS INFORMED OF THESE DISMISSALS.

22). ON MARCH 30, 2006, ONE WEEK AFTER THE DISCIPLINARIES HAD BEEN DISMISSED, PLAINTIFF SMITH WAS CALLED OUT TO A SPECIAL LEVEL REVIEW HEARING DEFENDANT MIKE SLAUGHTER ORDERED DESPITE THERE BEING NO DISCIPLINARIES. SEE ATTACHED EXHIBIT #4.

23). DEFENDANT MIKE SLAUGHTER GAVE FALSE INFORMATION TO THIS BOARD BY STATING THAT PLAINTIFF SMITH HAS "TWO DISCIPLINARIES PENDING" AND DEFENDANT NICK SALYER, WHO CHAIRED THE BOARD FAILED TO INFORM THE OTHER MEMBERS OF THE BOARD THAT THE INFORMATION WAS FALSE. SEE ATTACHED EXHIBIT #4.

24). THE LEVEL REVIEW BOARD RECOMMENDED PLAINTIFF SMITH BE DROPPED FROM A LEVEL-A TO A LEVEL-C THEREBY TAKING HIS JOB AND ALL PRIVILEGES BASED ON FALSIFIED INFORMATION.

25). AS PART OF THE UNIT MANAGEMENT, BOTH UNIT MANAGER SLAUGHTER AND CASE MANAGER NICK SALYER BOTH WERE AWARE THAT

THE DISCIPLINARIES HAD BEEN DISMISSED AND WERE THEREFOR CONSPIRING AGAINST PLAINTIFF SMITH.

26). HAVING REALIZED THEY HAD VIOLATED PLAINTIFF SMITH'S RIGHT TO DUE PROCESS UNIT MANAGER SLAUGHTER, CASE MANAGER SALYER AND IRC HAYES AGAIN CONSPIRED TOGETHER IN AN ATTEMPT TO COVER UP HAVING TAKEN PLAINTIFF SMITH BEFORE A LEVEL REVIEW BOARD ILLEGALLY AND ON APRIL 11, AND APRIL 12, 2006, SERVED THE SAME TWO DISCIPLINARIES TO PLAINTIFF SMITH.

27). ON APRIL 17, 2006, PLAINTIFF SMITH FILED A CLASSIFICATION APPEAL TO THE WARDEN. PLAINTIFFS APPEAL WAS DENIED BY WARDEN BELL, AND IN SUPPORT OF UNIT MANAGER SLAUGHTER, AND IN FURTHER VIOLATION OF POLICIES AND PLAINTIFF'S RIGHT TO DUE PROCESS, CITED REVIEW PANEL'S "ACTION" AS BEING "APPROPRIATE."

28). WARDEN BELL'S ACTION AND/OR FAILURE TO ACT ONLY AIDED IN THE CONSPIRACY AGAINST PLAINTIFF.

29). IT IS IMPORTANT TO NOTE HERE THAT PLAINTIFF WAS ALSO A MEMBER OF THE INMATE COUNCIL IN 2006 AND DURING AN INMATE COUNCIL MEETING, WARDEN BELL MADE THE STATEMENT THAT MIKE SLAUGHTER HAD HIS (BELL'S) FULL SUPPORT AND THAT HE WOULD NOT UNDERMINE ANY DECISION MADE BY HIS UNIT MANAGERS.

30). ON APRIL 21, 2006, UNIT MANAGER SLAUGHTER INFORMED PLAINTIFF SMITH THAT DEFENDANT SLAUGHTER WAS TAKING HIS (SMITH'S) JOB AS LEATHER INSTRUCTOR DUE TO LEVEL DROP. DEFENDANT SLAUGHTER DID THIS IN VIOLATION OF DUE PROCESS, PLAINTIFF'S CIVIL RIGHTS AS WELL AS VIOLATIONS OF TDOC/RMSI POLICIES.

31). ON MAY 3, 2006, THESE TWO DISCIPLINARIES WERE BOTH

DISMISSED AGAIN AND THE UNIT MANAGER AND PLAINTIFF WERE BOTH NOTIFIED OF THIS DECISION.

32). ON MAY 16, 2006, PLAINTIFF WAS SUMMONED BEFORE ANOTHER LEVEL REVIEW BOARD WHICH RECOMMENDED HE BE REINSTATED AS LEVEL-A.

33). ON MAY 18, 2006, PLAINTIFF WAS IN FACT REINSTATED TO LEVEL-A STATUS.

34). PLAINTIFF AGAIN FILED AN INFORMATION REQUEST FORM INQUIRING AS TO WHEN HE WOULD BE REINSTATED TO HIS JOB AS LEATHER INSTRUCTOR. UNIT MANAGER SLAUGHTER INFORMED PLAINTIFF SMITH THAT DUE TO THE DISCIPLINARIES HE WOULD NOT BE REINSTATED IN HIS FORMER JOB. SINCE THE DISCIPLINARIES HAD BEEN DISMISSED AND THEREFOR DID NOT EXIST THIS ACTION WAS A PERSONAL, AND VINDICTIVE ACTION TAKEN BY UNIT MANAGER SLAUGHTER AND THIS ACTION IS AGAINST ALL POLICIES, PLAINTIFF'S CIVIL RIGHTS AND THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION.

35). ON JUNE 12, 2006, THE DEPUTY WARDEN APPROVED THE UNIT MANAGER'S ACTIONS THEREBY JOINING IN THE CONSPIRACY IN VIOLATION OF THE RICO STATUTES.

37). ON AUGUST 22, 2006, PLAINTIFF FILED A GRIEVANCE CONCERNING THE DENIAL OF ACCESS TO A FEDERALLY FUNDED PROGRAM IN VIOLATION OF DUE PROCESS, CIVIL RIGHTS AND TITLE VI VIOLATIONS.

38). ON SEPTEMBER 26, 2006, GRIEVANCE WAS EXHAUSTED AND HAD BEEN DENIED. THIS ACTION, ORIGINATING WITH THE GRIEVANCE CHAIRMAN SERGEANT CASTILLE, SHOWS A BLATANT DISREGARD TO POLICY, DUE PROCESS AND INMATE RIGHTS. THIS ALSO GOES TO SHOW THE

WILLINGNESS OF RMSI/TDOC PERSONNEL TO SUPPORT EACH OTHER AND COVER UP ILLEGAL ACTS OF THEIR FELLOW OFFICERS.

39). IN AN ATTEMPT TO PREVENT THE PLAINTIFF FROM FILING ANY FURTHER DISCIPLINARIES, UNIT MANAGEMENT AND RMSI AND PERHAPS EVEN TDOC OFFICIALS BEGAN A SERIES OF MEETINGS, FRAUDULENT ACTS, AND BLATANT LIES SET UP TO MAKE PLAINTIFF FEEL THAT RMSI MANAGEMENT WAS GOING TO REINSTATE HIS JOB AND THAT HE NEED NOT FILE ANYMORE GRIEVANCES. THESE ARE AS FOLLOWS:

A). ON AUGUST 28, 2006, DEFENDANT HAYES, THE UNIT INMATE RELATION COORDINATOR, CALLED PLAINTIFF SMITH AND INMATE NICHOLS TO THE IRC'S OFFICE. IRC HAYES ASKED INMATE NICHOLS (WHO HAD BEEN PLACED IN THE LEATHER INSTRUCTOR'S POSITION), IF HE WOULD GIVE UP THE LEATHER INSTRUCTOR POSITION AND TAKE THE PAINTING INSTRUCTOR SO THAT PLAINTIFF SMITH COULD BE REINSTATED TO HIS JOB. INMATE NICHOLS INFORMED HAYES THAT HE WOULD MAKE THE CHANGE AND THAT HE HAD IN FACT PREVIOUSLY PUT IN A JOB REQUEST FORM FOR THE PAINTING POSITION BEFORE THEY TOOK THE LEATHER INSTRUCTOR POSITION FROM SMITH.

B) ON AUGUST 30, 2006, IRC HAYES AGAIN SPOKE TO PLAINTIFF ABOUT HIS JOB AND SAID THAT A MEETING WAS BEING SET UP BETWEEN PLAINTIFF AND THE UNIT CASE MANAGER SALYER.

C). PLAINTIFF SOON LEARNED THAT THERE WAS IN FACT NO MEETING SET UP BETWEEN HIMSELF AND THE CASE MANAGER.

D). ON SEPTEMBER 5, 2006, UNIT MANAGER SLAUGHTER JOINED IN THE FRAUD BY CALLING INMATE NICHOLS AND PLAINTIFF SMITH TO HIS OFFICE. UNIT MANAGER SLAUGHTER ASKED NICHOLS

12

IF HE WOULD BE WILLING TO MAKE THE CHANGE TO PAINTING INSTRUCTOR (THE SAME CHANGE ELUDED TO BY IRC HAYES) AND NICHOLS AGAIN AGREED TO THE CHANGE. UNIT MANAGER SLAUGHTER THEN SENT A MESSAGE, VIA COMPUTER, TO JERRY NEWMAN WHO WAS APPARENTLY ALSO IN ON THE FRAUDULENT SCHEME. UNIT MANAGER THEN INFORMED BOTH NICHOLS AND PLAINTIFF SMITH THAT THE PAPERWORK WOULD BE FORTHCOMING IN A COUPLE OF DAYS BUT THAT PLAINTIFF SMITH WOULD BE REINSTATED TO LEATHER INSTRUCTOR AND NICHOLS WOULD BECOME THE PAINTING INSTRUCTOR.

E). AFTER WAITING FOR OVER A WEEK, PLAINTIFF FILED AN INFORMATION REQUEST FORM INQUIRING AS TO THE JOB CHANGE. AS OF THE DATE OF THIS FILING, NEITHER INMATE NICHOLS NOR PLAINTIFF SMITH HAVE RECEIVED ANY RESPONSE AS TO THE JOB CHANGE.

F). THESE MEETINGS WERE OBVIOUSLY NOTHING BUT A PLOY IN AN ATTEMPT TO FRUSTRATE PLAINTIFF SMITH IN HIS ACTIONS TO EXERCISE HIS CIVIL RIGHTS AND HIS RIGHTS TO DUE PROCESS.

40). DURING THIS TIME FRAME, PLAINTIFF SMITH CONTINUED HIS ATTEMPTS TO GET IRC HAYES TO PAY FOR THE PROPERTY HE HAD PURCHASED. ALL PLAINTIFF'S ATTEMPTS ONLY SERVED TO GET HIMSELF THREATENED AND SUBJECTED TO FRAUDULENT DISCIPLINARY PROCEDURES WHICH CULMINATED IN PLAINTIFF'S LOSS OF JOB AND INCOME.

41). ON OCTOBER 10, 2006, PLAINTIFF FILED GRIEVANCE AGAINST IRC HAYES FOR THEFTS UNDER TDOC POLICY 502.05 VI (A)(37) - THE UNAUTHORIZED TAKING, RECEIVING OR CARRYING AWAY OF STATE

13

PROPERTY OR THE PERSONAL GOODS OF ANOTHER PERSON.

42). THIS GRIEVANCE WAS NEVER PUT BEFORE THE BOARD BECAUSE GRIEVANCE CHAIRPERSON SGT. CASTILE DEEMED THE GRIEVANCE AS "INAPPROPRIATE" DUE TO TIME LIMIT "EXPIRED". THE THEFTS AND IRC HAYE'S CONTINUED REFUSAL TO PAY FOR THE ITEMS WAS AND STILL IS AN ONGOING SITUATION THE CHAIRPERSON'S RESPONSE IS CLEARLY AN EFFORT TO COVER UP THE THEFTS COMMITTED BY HIS FELLOW RMSI EMPLOYEE.

43). ON NOVEMBER 15, 2006, HAVING APPEALED THE LEVEL ONE RESPONSE THROUGH THE GRIEVANCE PROCESS, PLAINTIFF RECEIVED THE RESPONSE FROM THE COMMISSIONER WHO AGREED WITH THE LEVEL ONE RESPONSE.

44). THE RULING BY THE GRIEVANCE CHAIRPERSON, UNIT MANAGER, DEPUTY WARDEN/WARDEN, AND COMMISSIONER IS IN DIRECT VIOLATION OF RMSI/TDOC POLICY AND SHOWS THAT A CONSPIRACY TO COVER THE THEFTS NOT ONLY INCLUDES RMSI PERSONNEL BUT GOES ALL THE WAY TO THE COMMISSIONER'S OFFICE.

45). HAVING EXHAUSTED ALL IN-HOUSE REMEDIES, PLAINTIFF FILED HIS COMPLAINT OF THEFT TO THE FEDERAL BUREAU OF INVESTIGATION.

46). FOLLOWING THE RECOMMENDATION BY THE F.B.I., PLAINTIFF FILED A COMPLAINT WITH ROLAND COLSON, COMMISSIONER OF OPERATIONS, TENNESSEE DEPARTMENT OF CORRECTIONS.

47). PLAINTIFF NOW HAVING EXHAUSTED ALL AVAILABLE REMEDIES, HAVING NO OTHER RECOURSE, FILE THIS COMPLAINT FOR THE VIOLATIONS OUTLINED IN PARAGRAPHS 1-46, AND PLAINTIFF HEREBY PRAYS THIS COURT GRANT THE RELIEF SOUGHT HEREIN.

14

## CLAIMS OF RELIEF

48). COMES NOW THE PETITIONER, OSCAR F. SMITH, THROUGH HIS ATTORNEY(S), FOR CLAIMS OF RELIEF AGAINST THE DEFENDANT(S) FOR CONSTITUTIONAL AND OTHER VIOLATIONS, TO WIT; THE 5TH, 8TH, AND 14TH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, CLAIMS UNDER THE DUE PROCESS CLAUSE THEREIN, VIOLATIONS OF THE CIVIL RIGHTS ACT 1983, 1984(3), AND 1985(3), VIOLATIONS UNDER THE RICO ACT, AS WELL AS VIOLATIONS OF T.C.A. STATUTES.

## CLAIM I

49). PLAINTIFF CLAIMS THAT WHEN DEFENDANT(S) SUBJECTED HIM TO PUNISHMENT WITHOUT DISCIPLINARIES AND WITHOUT THE DUE PROCESS AFFORDED UNDER PROPER DISCIPLINARY PROCEDURES AS IS OUTLINED HEREIN, DEFENDANTS VIOLATED HIS RIGHT TO DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS AND THAT DEFENDANTS VIOLATED HIS RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENTS UNDER THE 8TH AMENDMENT. SEE ATTACHED EXHIBITS #1 AND #4.

## FACTS/SUPPORTING AUTHORITY

50). UNDER THE DUE PROCESS CLAUSE NO [PRISONER] SHALL BE DEPRIVED OF LIFE, LIBERTY OR PROPERTY WITHOUT DUE PROCESS OF LAW.

51). ALTHOUGH THE COURT IN WOLFF V. MCDONNELL 418 U.S. 539; 94 S.CT. 2963; 41 L.ED. 2d 935 (1974), HAS ADDRESSED WHETHER OR NOT DISCIPLINARY PROCEDURES USED BY THE STATES WERE IN VIOLATION OF THE DUE PROCESS CLAUSE, THIS PRESENT CASE CHALLENGES THE ARBITRARY OMISSION OF THE ENTIRE DUE PROCESS AND RELIES ON WOLFF AS THE STANDARD FOR DISCIPLINARY PROCEDURES. WOLFF IDENTIFIES FIVE (5) FUNDAMENTAL REQUIREMENTS TO ENSURE

15

DUE PROCESS, THESE ARE (IN BRIEF);

1. ADVANCE WRITTEN NOTICE OF THE CHARGES AGAINST THE PRISONER...;

2. A WRITTEN STATEMENT BY THE FACT FINDERS AS TO THE EVIDENCE...;

3. THAT THE PRISONER BE ALLOWED TO CALL WITNESSES AND PRESENT DOCUMENTARY EVIDENCE IN HIS OR HER DEFENSE...;

4. COUNSEL SUBSTITUTE (FOR ILLITERATE PRISONER OR FOR COMPLEX ISSUES...;

5. THE DISCIPLINARY BOARD MUST BE IMPARTIAL.

52). THE 14TH AMENDMENT, IN PERTINENT PART, STATES THAT "NO STATE SHALL MAKE OR ENFORCE AN LAW...(WHICH DEPRIVES) ANY PERSON OF LIFE, LIBERTY, OR PROPERTY, WITHOUT DUE PROCESS OF LAW; NOR DENY TO ANY PERSON WITHIN ITS JURISDICTION THE EQUAL PROTECTION OF THE LAWS."

53). UNDER THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT, THE PLAINTIFF HAS THE RIGHT TO BE TREATED TO THE SAME DUE PROCESS AFFORDED OTHER PRISONERS IN THE T.D.O.C. AND THAT ANY PUNISHMENT METED OUT TO ANY DEATH ROW INMATE THAT IS GREATER THAN THAT OF OTHER INMATES FOR THE SAME INFRACTION IS VIOLATIVE OF THE 14TH AMENDMENT. SEE ATTACHED EXHIBIT #1 AND #4.

54). THE 8TH AMENDMENT ASSURES PROTECTION FROM CRUEL AND UNUSUAL PUNISHMENTS AND THE COURT, IN ROBINSON V. CALIFORNIA, 370 U.S. 660, 82 S.CT. 1417, 8 L.ED. 2d. 758 (1962), AFFIRMED THAT PUNISHMENTS METED OUT WHICH GO BEYOND THAT IMPOSED BY THE COURT ARE UNCONSTITUTIONAL.

16

## ALLEGATIONS

55). PLAINTIFF INCORPORATES PARAGRAPHS 1-47 IN THEIR ENTIRETY BY REFERENCE.

56). PLAINTIFF HEREBY ALLEGES THAT DEFENDANT(S) ACTIONS STATED HEREIN, SERVE TO SUPERSEDE, SUBVERT, OR COMPLETELY IGNORE THE DUE PROCESS AFFORDED THROUGH THE PROPER USE OF PRISON POLICIES AND PROCEDURES AND THAT DEFENDANT(S) ACTIONS IN NOT ABIDING BY PROPER PROCEDURE VIOLATES PLAINTIFF'S RIGHTS STATED HEREIN. SEE ATTACHED EXHIBITS #1,#2,#3 AND #4.

57). PLAINTIFF REPEATS AND RE-ALLEGES ALL OTHER ALLEGATIONS HEREIN AS THEY PERTAIN TO THIS PRESENT ISSUE.

## CLAIM II

58). PLAINTIFF CLAIMS THAT DUE TO DEFENDANT(S) REFUSING TO REINSTATE HIS JOB AS LEATHER INSTRUCTOR AS IS PROPER UNDER PRISON DISCIPLINARY PROCEEDINGS, DEFENDANT(S) VIOLATED PLAINTIFF'S RIGHTS UNDER THE 8TH AND 14TH AMENDMENTS AS WELL AS HIS CIVIL RIGHTS UNDER TITLE VI. SEE ATTACHED EXHIBIT #1 AND #4.

### FACTS/SUPPORTING AUTHORITY

59). THE 8TH AMENDMENT, IN PERTINENT PART, ASSURES THAT THERE SHALL BE NO "CRUEL AND UNUSUAL PUNISHMENTS INFLICTED."

60). THE 14TH AMENDMENT PROVIDES THAT "NO STATE SHALL MAKE OR ENFORCE ANY LAW...(WHICH DEPRIVES) ANY PERSON OF LIFE, LIBERTY, OR PROPERTY, WITHOUT DUE PROCESS OF LAW; NOR DENY TO ANY PERSON WITHIN ITS JURISDICTION THE EQUAL PROTECTION OF THE LAWS."

61). TITLE VI ASSURES EQUAL TREATMENT TO ALL (PRISONERS).

## ALLEGATIONS

62). PLAINTIFF INCORPORATES PARAGRAPHS 1-56 IN THEIR ENTIRETY BY REFERENCE.

63). PLAINTIFF ALLEGES THAT DEFENDANTS ACTIONS IN REFUSING TO REINSTATE HIS JOB AFTER BEING CLEARED OF ANY DISCIPLINARY INFRACTIONS SERVED ONLY TO VIOLATE HIS RIGHTS OUTLINED HEREIN.

64). PLAINTIFF REPEATS AND RE-ALLEGES ALL OTHER ALLEGATIONS HEREIN AS THEY PERTAIN TO THIS ISSUE.

## CLAIM III

65). PLAINTIFF CLAIMS THAT DEFENDANTS ACTIONS IN ALLOWING DEFENDANT GARY HAYES TO COMMIT THEFT, DEFENDANT(S) ACTIONS IN COVERING UP THE THEFT, AND DEFENDANT(S) ACTIONS IN THE ARBITRARY, MALICIOUS, AND VINDICTIVE USE OF THE DISCIPLINE PROCEDURES NOT ONLY SERVED TO VIOLATE HIS RIGHTS AS IS OUTLINED UNDER CLAIMS I AND II, BUT HAS ALSO SERVED TO VIOLATE TCA STATUTES 39-14-101 THEFT, TCA 39-14-103 THEFT OF PROPERTY, TCA 39-14-114 (A)(ii)(iii)(B) FORGERY, TCA 39-14-112 (a)(1)(2) EXTORTION, TCA 39-14-114 FORGERY, AS WELL AS TCA 39-12-103 (A)(B)(C)(e)(1) CONSPIRACY. SEE ATTACHED EXHIBIT #3 AND #4

## FACTS/SUPPORTING AUTHORITY

66). TCA 39-14-101 THEFT.

67). TCA 39-14-103 THEFT OF PROPERTY.

68). TCA 39-14-112 (a)(1)(2) EXTORTION.

69). TCA 39-14-114 (A)(ii)(iii)(B) FORGERY.

70). TCA 39-12-103 (A)(B)(C)(e)(1).

## ALLEGATIONS

71). PLAINTIFF INCORPORATES PARAGRAPHS 1-64 IN THEIR

-18-

ENTIRETY BY REFERENCE.

72). PLAINTIFF ALLEGES THAT DEFENDANT(S) ARBITRARY, MALICIOUS, ILLEGAL, AND CONSPIRATORIAL ACTIONS SERVED TO VIOLATE NOT ONLY HIS RIGHTS BUT ARE ALSO CRIMINAL VIOLATIONS.

73). PLAINTIFF REPEATS AND RE-ALLEGES ALL OTHER ALLEGATIONS HEREIN AS THEY PERTAIN TO THIS PRESENT ISSUE.

## CONCLUSION

74). COMES NOW THE PLAINTIFF OSCAR F. SMITH, BASED ON THE FOREGOING COMPLAINT, AND ASKS THIS COURT FOR THE FOLLOWING:

## COMPENSATORY DAMAGES

75). AS A DIRECT RESULT OF THE DEFENDANT(S) ACTS OR FAILURES TO ACT RESULTING IN VIOLATIONS OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, VIOLATIONS OF FEDERAL AND STATE STATUTES, VIOLATIONS OF TITLE VI STATUTES AS WELL AS OTHER VIOLATIONS WHICH MAY BE FOUND, PLAINTIFF HAS SUFFERED;

A). PHYSICAL AND MENTAL PAIN AND ANGUISH OUTLINED IN PARAGRAPHS 1-73.

B). MORE PARTICULARLY PLAINTIFF HAS SUFFERED DAMAGES, AS A RESULT OF DEFENDANT(S) TAKING AND REFUSING TO REINSTATE PLAINTIFF IN HIS JOB AS LEATHER INSTRUCTOR IN AMOUNTS WHICH CAN ONLY BE REALIZED AFTER A COMPLETE INVESTIGATION.

C). PLAINTIFF HAS SUFFERED DAMAGES AS A RESULT OF SALES OF ARTS & CRAFTS PROJECTS AS A RESULT OF DEFENDANT(S)' REFUSAL TO ALLOW PLAINTIFF TO PARTICIPATE IN FEDERALLY FUNDED PROGRAM AS WELL AS THE LOSS OF MATERIAL AND PROJECTS WHICH RESULTED FROM DEFENDANT(S) ACTIONS.

-19-

## EXEMPLARY DAMAGES

76). DEFENDANTS ACTIONS AND FAILURES TO ACT, WHICH WERE DONE WILLFULLY, INTENTIONALLY, MALICIOUSLY, KNOWINGLY, IN COMPLETE DISREGARD TO THE LAWS OF THIS STATE AND THIS COUNTRY, IN COMPLETE DISREGARD TO THE DIRECTIVES SET DOWN BY THIS COURT IN PRIOR ACTION UNDER GRUBBS V. BRADLEY, IN COMPLETE DISREGARD TO THE EFFECT OF THEIR ACTS OR FAILURES TO ACT ON THE PLAINTIFF WHO IS UNDER THEIR CARE, WERE THE DIRECT CAUSE OF THE INJURIES/DAMAGES SUFFERED BY PLAINTIFF OUTLINED IN THIS ACTION.

77). TO PUNISH DEFENDANTS FOR WILLFUL, MALICIOUS, AND INTENTIONAL ACTS, EXEMPLARY DAMAGES MUST BE CALCULATED IN SUCH MANNER AS TO PROVIDE EFFECTIVE PUNISHMENT WHICH WILL SERVE AS A DETERRENCE TO DEFENDANT(S) FUTURE ACTS OR FAILURE TO ACT.

78). PLAINTIFF ASSERTS THAT TO DETER DEFENDANT(S) FROM FUTURE VIOLATIONS, DAMAGES MUST BE AWARDED WHICH ARE ALSO PUNITIVE IN NATURE.

A). DEFENDANTS HAVE ALREADY EXHIBITED A BLATANT DISREGARD FOR THE GUIDELINES AND ACTIONS TAKEN BY THIS COURT AS A RESULT OF PRIOR CAUSE OF ACTION TAKEN AGAINST DEFENDANTS UNDER GRUBBS V. BRADLEY AND ADJUDICATION WITHOUT PUNISHMENT WILL ONLY RESULT IN DEFENDANT(S)' FUTURE VIOLATION OF ANY ACTION TAKEN BY THIS COURT FROM THIS PRESENT ACTION.

B). PLAINTIFF ASSERTS THAT, WHERE THE COURT JUDGES APPROPRIATE, ANY DEFENDANT(S) WHO HAVE SHOWN THEIR ACTIONS TO BE OF A PERSONAL NATURE, SHOULD BE HELD ACCOUNTABLE NOT ONLY AS AGENTS FOR THE STATE OF TENNESSEE, BUT SHOULD

BE HELD ACCOUNTABLE IN REGARD TO THEIR ACTIONS AS INDIVIDUALS ACTING IN AND OF THEMSELVES.

C). PLAINTIFF ALSO ASSERTS THAT ANY PUNITIVE/DETERRENT ACTION TAKEN AGAINST ANY DEFENDANT SHOULD INCLUDE, BUT NOT BE LIMITED TO, IF FOUND APPROPRIATE, CRIMINAL LIABILITY WHICH MAY RESULT AFTER A FULL AND THOROUGH INVESTIGATION OF ANY CLAIMS MADE BY PLAINTIFF IN THIS OR ANY FUTURE AMENDED PETITION.

## INJUNCTIVE RELIEF

79). PLAINTIFF ASSERTS THAT IMMEDIATE INJUNCTION SHOULD BE TAKEN AGAINST DEFENDANT(S) PREVENTING DEFENDANTS FROM TAKING ANY RETALIATORY ACTION AGAINST PLAINTIFF OR AGAINST ANY INMATE OR OFFICER WHO MAY LATER BE CALLED TO TESTIFY AS A RESULT OF THIS ACTION.

80). PLAINTIFF ASSERTS THAT IMMEDIATE INJUNCTION SHOULD BE TAKEN AGAINST DEFENDANTS REQUIRING THAT DEFENDANTS ACTIONS AND FUTURE ACTIONS BE BROUGHT INTO COMPLIANCE WITH THE COURT ORDER RESULTING FROM GRUBBS V. BRADLEY AND THE DEATH ROW PLAN (1985), THIS ACTION TO INCLUDE BUT NOT BE LIMITED TO PLACING THE TENNESSEE DEPARTMENT OF CORRECTION AND/OR RIVERBEND MAXIMUM SECURITY INSTITUTION UNDER MANAGEMENT OF A FEDERAL OVERSEER UNTIL SUCH TIME AS TDOC/RMSI COMES INTO COMPLIANCE.

81). THAT UPON A SHOWING OF CONSTITUTIONAL VIOLATIONS, THE STATE OF TENNESSEE RECEIVE IMMEDIATE INJUNCTION AGAINST THE PURSUIT OF OR CARRYING OUT OF ANY FURTHER EXECUTIONS FOR ANY PURSUIT OF CAPITAL PUNISHMENT IN ANY STATE WHICH IS NOT IN ACCORD WITH THE CONSTITUTION IS AND OF ITSELF A VIOLATION

21

OF THE CONSTITUTION AND THE LAWS OF THIS COUNTRY.

## PRAYERS FOR RELIEF

82). THAT THIS COURT HOLD DEFENDANTS ACCOUNTABLE ACCORDING TO THE COURTS OWN WORDS UNDER GRUBBS V. BRADLEY, 552 F. SUPP. 1052 (U.S. DIST. 1982), "FINALLY, IT SHOULD GO WITHOUT SAYING THAT IF THE FOREGOING APPROACH PROVES INEFFECTIVE TO ELIMINATE CRUEL AND UNUSUAL PUNISHMENT IN TDOC PRISONS, THE COURT WILL NOT HESITATE TO RESORT TO MORE DRASTIC MEASURES."

83). SUCH OTHER, FURTHER AND ADDITIONAL RELIEF AS TO THIS COURT MAY SEEM PROPER, TOGETHER WITH, BUT NOT LIMITED TO, THE INTEREST, COSTS AND DISBURSEMENTS OF THIS ACTION, INCLUDING JUST AND REASONABLE ATTORNEYS' FEES AND EXPENSES.

SUBMITTED THIS __3__ DAY OF __April__ 2007

BY

_Oscar F. Smith_
OSCAR F. SMITH #136424, UNIT 2, A-104
RIVERBEND MAXIMUM SECURITY INSTITUTION
7475 COCKRILL BEND BLVD.
NASHVILLE, TENN. 37209-1048